IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

| | |
|---|---|
| JARED ANDREW NEISSER #463-745 | : |
|       Plaintiff | : CASE NO.: 19-00888 ELH |
| v. | : |
| WEXFORD HEALTH SOURCES, INC., et al. | : |
|       Defendants | : |

## MEMORANDUM OF LAW

Defendants Wexford Health Sources, Inc. ("Wexford"), Marnette Valcin, N.P. ("NP Valcin"), Bernard Alenda, N.P. ("NP Alenda") and Eveline Bobga Tatong, R.N. ("RN Bobga Tatong") (collectively, the "Medical Defendants"), by their counsel, Gina M. Smith, Douglas C. Meister, and Meyers, Rodbell & Rosenbaum, P.A., hereby submit the following Memorandum of Law in support of their Motion to Dismiss or, in the alternative, Motion for Summary Judgment.

### I.    INTRODUCTION

On March 22, 2019, Plaintiff Jared Andrew Neisser, *pro se*, filed a complaint in the U.S. District Court for Maryland for deliberate indifference to his medical needs under 42 U.S.C. § 1983. ECF 1. On April 18, 2019, Plaintiff filed an amended complaint naming the individual Medical Defendants as defendants. ECF 6.

Plaintiff's claims arise out of the alleged improper administration of Narcan to Plaintiff during a seizure episode and denial of access to his medical records. ECF 1.

Plaintiff seeks as damages injunctive relief in the form of an order that his institutional record is cleared of any wrong doing, $300,000 in punitive damages, and $1,000 for violations of "COMAR." ECF 1.

{392291.DOC}

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff is a 40 year old inmate with a medical history significant for gastrointestinal reflux, asthma, chronic pain, epilepsy, irritable bowel symptoms, and a mental health history significant for depression. Plaintiff is located at Maryland Correctional Training Center (MCTC) but at the time relevant to his complaint was at JCI. See Plaintiff's medical records relevant to his complaint attached as Exhibit 1 and the Affidavit of Ayoku Oketunji, M.D., attached as Exhibit 2. Plaintiff's undisputed encounters with the Medical Defendants are discussed below.

On August 21, 2018, Plaintiff was seen by RN Bobga Tatong for an emergency medical call. Exhibit 1 at 2-3. Medical was called at 1827 and arrived at 1832. Id. Plaintiff was on the floor, sweaty, responsive but could not follow command. Id. Vital signs were O2 of 96%, pulse 107, fingerstick 94. The primary assessment was airways were patent, Plaintiff was breathing, pulse was present, there was no bleeding and no cervical injury. Id. Nasal spray Narcan[1] was administered at 1835 and Plaintiff immediately opened his eyes and made eye contact, but still could not follow commands and was weak. Id. Custody reported Plaintiff had been found shaking on the bed and so was moved to the floor. Id. Plaintiff was brought to medical still drowsy, weak and with slow speech, but coherent. Id. Pursuant to RN Tatong's note, Plaintiff was given Narcan intramuscularly (IM) at 1845 per order of NP Valcin. Id. At 1900 Plaintiff's speech was better, he was alert and oriented to person, place and time, O2 of 97% and pulse 94. Plaintiff reported he had stopped taking his seizure medication for some time. Id. Plaintiff was given Keppra[2] 500mg 1 tab PO and Tylenol 325mg. Id. Plaintiff responded to treatment, his

---

[1] Naloxone (Narcan) blocks or reverses the effects of opioid medication, including extreme drowsiness, slowed breathing, or loss of consciousness. An opioid is sometimes called a narcotic. See https://www.drugs.com/naloxone.html.

[2] Keppra (levetiracetam) is an anti-epileptic drug, also called an anticonvulsant. See

2

{392291.DOC}

respirations were even and unlabored, bilateral lungs were clear to auscultation and he could move both his hands. Id. At 1951 Plaintiff indicated his bilateral legs were locking up. Id. At about 2000 Plaintiff was given Benadryl 50mg IM pursuant to NP Valcin. Id. At 2020 Plaintiff complained of headache and was given Excedrin Migraine. Id. At 2040 Plaintiff felt much better and was discharged back to the HUB by NP Alenda. Id.

On August 21, 2018, Plaintiff was also seen by NP Valcin in response to the emergency call. Exhibit 1 at 4-5. Pursuant to NP Valcin's chart note, Plaintiff was lying in a prone position on a mattress in his cell. Id. On initial assessment Plaintiff was turned to supine, was breathing, no response to pain and voice stimuli. Id. O2 was 96-97%, pulse 110, Plaintiff was sweating heavily. Id. The events preceding this change of mental state were unknown. Id. Narcan nasal spray was given and Plaintiff opened his eyes and made eye contact but remained non-verbal. Id. Plaintiff was taken to medical and given Narcan IM. Id. Plaintiff responded appropriately, Plaintiff speech was slow and he was lethargic but was oriented to self, place and situation. Id. Plaintiff's history of seizure was noted. Id. Plaintiff reported he had stopped taking his seizure medications for some time. Id. Plaintiff had a headache. Id. Plaintiff denied taking illicit substances. Id. There was no shortness of breath, no chest pain, and no light headedness. Id. The assessment was ambiguous between a post ictal state and substance abuse. Id.

On August 21, 2018, Plaintiff was also assessed by NP Alenda in medical. Exhibit 1 at 6. NP Alenda's note reflects that Plaintiff was treated for a medical emergency for apparent seizure. Id. Plaintiff was managed with nasal Narcan, Narcan IM, Excedrin, Keppra, and Benadryl IM. Plaintiff was awake with clear speech and moved all extremities. Id. Plaintiff was discharged to the HUB to await a court appearance the next morning. Id.

---

https://www.drugs.com/keppra.html.

On about September 10, 2018, Plaintiff submitted a sick call slip to be seen by mental health. Exhibit 1 at 7. Plaintiff complained that ever since the incident at JCI he had trouble sleeping, concentrating, and was extremely worried. Id.

On September 10, 2018, Plaintiff was seen by mental health. Exhibit 1 at 8. Plaintiff was irritable and defensive. Id. Plaintiff was angry about the events when he was sent out for medical care. Id. Plaintiff kept requesting confirmation medical did something wrong. Id. It was explained that was not the providers role and Plaintiff became upset and left. Id.

On September 10, 2018, Plaintiff was seen by Contah Nimely, M.D. at chronic care clinic. Exhibit 1 at 9-11. Plaintiff's most recent seizure was noted to have been a few weeks ago while out for a court appearance. Id. Plaintiff reported he was off Keppra. Id. Plaintiff wanted to continue Excedrin because it improved his headaches. Id. Plaintiff was advised to discontinue Excedrin if he had another seizure. Id. Plaintiff was advised to be compliant with Keppra. Id. On exam, Plaintiff was negative for focal weakness, gait disturbance, incontinence, light headedness, memory loss or paresthesia.[3] Plaintiff was otherwise unremarkable. Id.

On December 4, 2018, Plaintiff was seen by Munjanja Litell, N.P. at chronic care clinic. Exhibit 1 at 12-14. Plaintiff had no seizures in the prior 90 days. Id. Plaintiff's neurologic exam was unremarkable. Id.

On or about January 26, 2019, Plaintiff submitted a sick call slip to obtain all his medical records. Exhibit 1 at 15. At an unknown date Plaintiff submitted a memorandum alleging the Maryland Public Information Act required he be given his medical records. Exhibit 1 at 16.

---

[3] A feeling as though your skin was crawling, or had numbness or itching for no apparent reason. https://www.healthline.com/health/paresthesia

4

{392291.DOC}

Plaintiff continues to have regular access to health care providers through the chronic care clinic. See Exhibit 2. Plaintiff continues to have access to more immediate medical care though use of the sick call process. Id.

## III. <u>LEGAL STANDARDS</u>

In review of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), plaintiff's well-pleaded material facts may be taken as admitted, but not plaintiff's legal conclusions. <u>Kugler v. Helfant</u>, 421 U.S. 117, (1975). Dismissal of a complaint is appropriate when it appears to a reasonable certainty that the plaintiff is not entitled to relief under any statement of facts which could be proven in support of his claim. <u>Wilson v. Civil Town of Clayton</u>, 839 F.2d 375 (7th Cir. 1988). Therefore, when it is clear, as in the above captioned Complaint, that a plaintiff can prove no set of facts which would entitle him to relief, the complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Since there are no facts in this matter which would indicate a claim for violation of Plaintiff's civil rights under 42 U.S.C. § 1983, Plaintiff's Complaint must be dismissed for failing to state a claim upon which relief can be granted.

Alternatively, the Medical Defendants are entitled to judgment in their favor as a matter of law. Federal Rule of Civil Procedure 56 provides that summary judgment shall be entered in favor of the moving party when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). The moving party has the burden to show that there is no dispute as to material facts, however, it need not negate its opponent's case, but need only to disclose the absence of evidence to support that case. <u>Weinberger v. Bristol-Myers Co.</u>, 652 F. Supp. 187 189 (D. Md. 1986) (citations omitted).

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Johnson v. Aldana, 2009 U.S. Dist. Lexis 74131 at 13 (No. JFM-08-2111, D. Md., Aug. 19, 2009). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of defendants (or their failure to act) amounted to deliberate indifference to a serious medical need. Id. at 5; (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need is defined as "treatment [that is] so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Hodgson v. Corizon Med. Staff, 2012 U.S. Dist. Lexis 103484 at 19 (No. ELH-11-3515, D. Md. July 24, 2012); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

A showing of mere negligence is not enough to meet the standard. Hodgson, supra; see also Farmer v. Brennan, 511 U.S. 825, 835 (1994); Grayson v. Feed, 195 F.3d 692, 695 (4th Cir. 1999). Indeed, "mere error of judgment or 'inadvertent failure to provide medical care, while perhaps sufficient to support an action for malpractice, will not constitute a constitutional deprivation redressable under [42 U.S.C. § 1983]." Boyce v. Alizaduh, 595 F.2d 948, 953 (4th Cir. 1979) (quoting Estelle, 429 U.S. at 104). In addition, inmates do not have a constitutional right to treatment of their choice, Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986), and disagreements between medical staff and an inmate over the necessity for or extent of medical treatment do not rise to a constitutional injury and will not make out a cause of action under § 1983. Estelle, 429 U.S. at 105-106; Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Taylor v. Barnett, 105 F.Supp.2d 483, 487 (E.D. Va. 2000); U.S. v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011).

6

{392291.DOC}

## IV. ARGUMENT

### A. PLAINTIFF FAILS TO STATE ANY CAUSE OF ACTION UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. SECTION 1983

**i. Plaintiff's Complaint is insufficient on its face and must be dismissed.**

"[W]here the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." Dove v. Fordham Univ., 56 F.Supp.2d 330, 335 (S.D.N.Y.1999), quoting Morabito v. Blum, 528 F.Supp. 252, 262 (S.D.N.Y.1981); Zavatsky v. Anderson, 130 F.Supp.2d 349, 358 (D.Conn. 2001) (complaint naming two defendants only in the caption was dismissed as to those two defendants.) "Further, even a pro se plaintiff has the burden of alleging sufficient facts upon which a recognized legal claim could be based. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.1991); Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir.1996)." Allison v. Utah County Corp. 223 F.R.D. 638, 639 (D. Utah 2004).

To state a constitutional cause of action requires that some facts be alleged against the defendants showing some basis for the allegation of constitutional delinquency. In the absence of such facts, the pro se complaint should be dismissed. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). As Twombly expounded, and Iqbal confirmed, the standard of sufficiency for federal pleadings "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 555). A complaint must pass a plausibility test that "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949. Though Federal Rule of Civil Procedure 8 imposes no "hyper-technical" pleading requirements, it also "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950. Instead, Rule 8 "'contemplate[s] the statement of circumstances, occurrences, and events in

7

support of the claim presented' and does not authorize a pleader's 'bare averment that he wants relief and is entitled to it.'" Twombly, 550 U.S. at 1965 n.3 (emphasis added ) (quoting 5 Wright & Miller, Federal Practice and Procedure § 1202 at 94-95 (3d ed. 2004)). Under these standards, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 129 S. Ct. at 1950. Thus, in cases like this one, where plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Twombly, 550 U.S. at 1974.

Plaintiff alleges insufficient facts to raise his allegations to the level of plausibility that Twombly and Iqbal require. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (emphasis added). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

**Plaintiff simply does not mention *any* of the Medical Defendants anywhere in the body of the Complaint.** ECF 1. Absent any allegation of wrongdoing by any of the defendants, Plaintiff has failed to state a cause of action against any of them. Accordingly, they must be dismissed. Iqbal, Twombly, *supra*.

Finally, Wexford as a corporation, cannot provide medical care, including providing the medication Narcan. Therefore Plaintiff cannot sustain any cause of action against Wexford and therefore Wexford must be dismissed.

### ii. Wexford cannot be liable for Plaintiff's alleged injuries because *respondeat superior* is not recognized in § 1983 claims and Plaintiff has not alleged policy and procedure liability as to Wexford

As a threshold matter, it is well-established that *respondeat superior* has no application in 42 U.S.C. § 1983 claims. See Powell v. Shopco Laurel, Co., 678 F. 2d 504, 506 (4th Cir., 1982)

(holding that the proscription of *respondeat superior* forming the basis of § 1983 claims applies with equal force to private corporations). Rather, a private corporation carrying out a governmental function, such as the delivery of medical care in a prison setting, may be sued under § 1983 for constitutional deprivations only if they result from policy, custom or practice of the entity. Monell v. New York City Dept. of Soc. Serv's., 436 U.S. 658 at 690 (1978). Accordingly, to establish a claim against Wexford, Plaintiff must demonstrate Wexford maintained unconstitutional policies and procedures that were the motivating force behind the alleged constitutional violations of its employees. A claim for policy or custom liability requires a plaintiff allege and prove: (1) **the existence of an official policy or custom** (2) that is fairly attributable to the defendant; and (3) **that proximately caused the underlying violation of the plaintiff's rights.** See Monell, 436 U.S. at 690; Jordan ex rel. Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994); Newbrough v. Piedmont Reg'l Jail Auth., 822 F. Supp. 2d 558, 582, (E.D. Va. 2011). Plaintiff's Complaint does none of these. See ECF No. 1. Thus, the Complaint in no manner implicates a policy or custom of Wexford's to state a viable claim against the company.

Consequently, as Wexford is a private corporation and not a "person" for § 1983 purposes, and since Plaintiff has not alleged that any of Wexford's policies or procedures violated Plaintiff's Constitutional rights, no claim will lie against Wexford under § 1983 and it should be dismissed as a Defendant. Id.

### iii. Plaintiff's allegations of medical negligence are not judicially actionable.

Plaintiff alleges that the medical staff at JCI were "wrong" *to administer* Narcan (ECF 1) and that they were not properly trained or experienced enough to treat his seizure episode (ECF 1-1, p. 5). This does not constitute a *denial* of care. At most this alleges a state law claim for medical negligence. It is well settled that negligence alone does not state a claim under 42

9

{392291.DOC}

U.S.C. § 1983. Section 1983 was amended to protect only federal rights guaranteed by federal law and not tort claims for which there are adequate remedies under state law. Estelle v. Gamble, 429 U.S. 97; Wright v. Collins, 766 F.2d 841, 849 (1985). Thus, claims of negligence and\or medical malpractice which assert merely a disagreement over treatment between an inmate and his health care providers do not state a claim under §1983. See Estelle, 429 U.S. 91 and see Hughes v. Joliet Correctional Center, 931 F.2d 425, 428 (7th Cir. 1991) (if the claim is merely medical malpractice, it should be brought in state court).

The Maryland Health Care Malpractice Claims Act, Cts. & Jud. Proc. § 3-2A-01 *et seq.*, provides that all actions by a person against a health care provider for a medical injury allegedly suffered by the person in which damages are sought which exceed the concurrent monetary jurisdiction of the State's district court may not be pursued in any court of Maryland, but that such claims must be filed with the Health Claims Arbitration Office before the case can reach the courts in the manner therein prescribed.

Pursuant to § 3-2A-01 et seq. of the Annotated Code of Maryland, Courts and Judicial Proceedings, Plaintiff's Complaint constitutes a suit against a health care provider for a medical injury. As such, initial jurisdiction over this action lies with the Health Claims Alternative Dispute Resolution Office and the Plaintiff's Complaint must be dismissed.

### iv. Plaintiff claim his medical records were wrongly denied does not allege a serious medical need.

The second count of Plaintiff's complaint is that he was improperly denied more than six months of his medical records. ECF 1. This does not involve a serious medical need and therefore is not deliberate indifference. Deliberate indifference to a serious medical need is defined as "treatment [that is] so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Hodgson v. Corizon Med. Staff, 2012

10

{392291.DOC}

U.S. Dist. Lexis 103484 at 19 (No. ELH-11-3515, D. Md. July 24, 2012); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Given the legal standard necessary to state a claim under §1983, it is patently obvious that Plaintiff's Complaint falls far short of the required standard to withstand this Motion to Dismiss. Therefore, Plaintiff's Complaint must be dismissed as failing to state a claim upon which relief can be granted.

### B. BASED ON THE UNDISPUTED MATERIAL FACTS THE MEDICAL DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW

Summary Judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56, Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Based on the undisputed material facts as presented in the pleadings, the relevant medical records of Plaintiff attached hereto as Exhibit 1, and the Affidavit of Ayoku Oketunji, M.D. attached hereto as Exhibit 2, the Medical Defendants are entitled to judgment as a matter of law.

Here, there is no evidence that the Medical Defendants were deliberately indifferent to Plaintiff's medical needs. Nor is there evidence that Plaintiff's condition was ignored. In determining whether a prisoner has received adequate medical treatment, a court is entitled to rely on the medical records kept in the ordinary course of operation. Bennett v. Reed, 534 F.Supp. 83, 86 (E.D.N.C. 1981) aff'd, 676 F.2d 690 (4th Cir. 1982). When it appears from the entire record that the prison medical or mental health authorities have made a sincere and reasonable effort to handle the plaintiff's medical problems, plaintiff's constitutional rights have not been violated. Id. at 87. Plaintiff's medical records, which document the treatment provided to Plaintiff during the time period relevant to the Complaint, illustrate that the Medical

11

{392291.DOC}

Defendants appropriately treated Plaintiff for his seizure episode.

**i. Narcan administration**

On August 21, 2016, Plaintiff was treated by a mid-level provider after being found unresponsive in his cell. Affidavit of Dr. Oketunji attached as Exhibit 2. The events precipitating this incident were unknown. Id. Plaintiff's airway, breathing and circulation were patent. Id. Plaintiff's level of consciousness was assessed as being unresponsive to voice or pain stimuli. Id. Plaintiff's vitals were stable including a fingerstick of 94. Plaintiff was administered nasal Narcan and transferred to medical. Id. At medical Plaintiff was administered Narcan intramuscularly. Id. Plaintiff began to respond appropriately. Id. Plaintiff complained that his legs were "locking up" and Benadryl was administered intramuscularly, which provided relief. Id. Plaintiff was held for four hours observation and was released feeling much better. Id. Plaintiff reports that a subsequent urinalysis was negative for illicit substances. Id. No other incidents or complications from this incident were reported by Plaintiff. Id.

Plaintiff's complaint appears to allege that treatment with Narcan automatically implied Plaintiff was using illicit opioids (e.g., this "could have" affected Plaintiff's security status, good conduct credits, and release date). Id. Plaintiff also appears to allege that administration of Narcan was in error and caused him to suffer a possibly lethal side effect of his legs "locking up." Id. Finally, Plaintiff alleges that administering Narcan was negligent because the providers were improperly trained and neglected to note that he had a history of epileptic seizures. Id.

Plaintiff's allegation that treatment with Narcan automatically implied Plaintiff was using illicit opioids is incorrect. Id. Rather, the mid-level providers were simply following the appropriate medical standard of care when treating an unresponsive patient presenting in Plaintiff's clinical condition. Id. Specifically, under these circumstances the immediate concern

12

is to assess the patient for obstructions to airway and breathing, or impeded circulation. Id. If there are no signs of an obstructed airway or impaired circulation the next immediate intervention is to obtain a blood glucose level to rule out hypoglycemia as a cause of non-responsiveness. Id. Blood glucose is assessed by obtaining a fingerstick sample of the patient's blood. Id. In this instance, Plaintiff's blood glucose did not reveal hypoglycemia as a cause for his non-responsiveness. Id.

Absent evidence of an obstructed airway or obvious impaired circulation or hypoglycemia, the standard of care dictated treating Plaintiff with Narcan. Narcan (naloxone) is an opioid antagonist used for the complete or partial reversal of opioid overdose, including respiratory depression. Id. Narcan works by binding to opioid receptors to quickly reverse and block the effects of opioids. Narcan is also used for *diagnosis of suspected* or known acute opioid overdose. Id. As with any drug, Narcan can have side effects, some serious and in rare instances, death. Id. However, the most common affect is acute opioid withdrawal symptoms. Id. Narcan has widely been successful in treatment of opioid toxicity due to its relatively low incidence of side effects, particularly in the *absence* of opioid toxicity. Id. In view of the potentially very serious, and commonly lethal, effects of opioid toxicity (including brain injury and death) compared to the low incidence of side effects from Narcan, it is standard medical procedure to administer it empirically as described above for unresponsive patients notwithstanding other potential sources of unresponsiveness including reported or observed seizure activity or in a patient with seizure history. Id. "Even if you are not sure an opioid overdose has occurred, if the person is not breathing or is unresponsive, give the naloxone injection right away and then seek emergency medical care."[4] Indeed, timely empirical

---

[4] See https://www.drugs.com/naloxone.html. See also "The emergency medicine approach to an unconscious patient." First10EM, Feb. 22, 2016 by Justin Morgenstern. See https://first10em.com/unconscious/. "A systematic

13

{392291.DOC}

administration of Narcan is crucial to reaping the medication's benefits (e.g., reversing opioid toxicity and stabilizing the patient until they are transported to a hospital for definitive treatment). Exhibit 2. Thus, in short, the benefit of using the medication prior to confirmation of overdose outweigh the risks to the patient particularly in the prison setting where abuse and overdose on opioids is common. Id. Accordingly, in Dr. Oketunji's medical opinion to a reasonable degree of medical probability, administering Narcan to Plaintiff in this situation was within the medical standard of care and was not a consequence of negligence or lack of training. Id.

After administration of Narcan, Plaintiff became communicative responding appropriately to questioning. Id. Plaintiff admitted non-compliance with Keppra, an epileptic seizure medication. Id. Keppra 500mg PO was therefore administered. Id.

Plaintiff alleges that his leg muscles "locked up" as a side effect of Narcan. Id. This is not a known side effect of Narcan. Id. While it is possible that Narcan caused this unique side-effect in Plaintiff, it is in no manner evidence of any negligence or lack of training by the mid-level providers. Id.

The final assessment by the mid-level provider was not opioid toxicity. Id. Contrary to Plaintiff's allegations that epileptic seizures are easily differentiated from opioid toxicity, Plaintiff's recovery progress was clinically assessed as ambiguous for either post ictal seizure symptoms or opioid toxicity. Id. A rapid increase in responsiveness to Narcan is a typical reaction. Id. However, Plaintiff also displayed symptoms of recovery from an ictal seizure and had admitted not being compliant with Keppra. Id. It was not immediately apparent which may have caused Plaintiff's unresponsive condition. Id.

---

approach to the unconscious patient." Tim Cooksley, et al., Clinical Medicine 2018 Vol. 18, No. 1:88-92. See http://www.clinmed.rcpjournal.org/content/18/1/88.full.

{392291.DOC}

In Dr. Oketunji's opinion to a reasonable degree of medical probability, Plaintiff received appropriate treatment for his unresponsive condition on August 21, 2016, including administration of Narcan. Id. In Dr. Oketunji's opinion to a reasonable degree of medical probability, Plaintiff did not suffer any significant harm due to administration of Narcan. Id. Plaintiff will continue to be regularly seen at chronic care and to have access to medical staff at all times via the sick call process. Id.

Finally, the individual Medical Defendants are immune from Plaintiff's allegations of medical negligence in their good faith administration of Noloxone. See Md. Code, Health Gen. I § 13-3108.

### ii. Denial of Medical Records

Plaintiff appears to allege it was wrongdoing to delay him access to his medical records by relying on the DPSCS policy of only allowing inmates to review and copy their medical records every six months. ECF 1. It is in fact DPSCS policy that inmates can only review and copy their medical record every six months. See DPSCS Medical Records Manual, copy attached as Exhibit 3, at II(C)(1)(c). There is no error in complying with this policy. Ingram v. Arnaout, No. CIV. WDQ-10-3160, 2011 WL 1627188, at *5 (D. Md. Apr. 27, 2011) (no error in complying with DPSCS Policy allowing prisoners to review and copy medical records only every six months).

Plaintiff asserts that the Public Information Act allows him unfettered access to his medical records. ECF 1. This is incorrect. Plaintiff's medical records are personal, not public, records. See Md. Code, Gen. Provisions § 4-101(f)(2).

In any event, Plaintiff admits he has received the medical records he has sought and has not identified any harm or damages suffered from any delay in receipt of those records.

15

{392291.DOC}

Further, Plaintiff is not a physician and is not competent to diagnose either his condition or opine on the treatment provided to him. It is clear that Plaintiff simply disagrees with the treatment he was provided. Plaintiff's disagreement with medical providers regarding the nature of his medical care does not constitute a viable constitutional claim. "An inmate's disagreement with medical providers about the proper care and course of treatment does not support a § 1983 claim, in the absence of "exceptional circumstances." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); See Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975). See also Peterson v. Davis, 551 F.Supp. 137, 146 (D.Md. 1982), aff'd, F.2d 1453 (4th Cir. 19984). This is because "an inmate does not have a constitutional right to specific medical treatment on demand, simply because he thinks he needs a certain procedure, nor does he have a constitutional right to be treated by a specific doctor, nurse, or other medical personnel." Shannon v. Dep't of Pub. Safety, 2012 U.S. Dist. LEXIS 48402, *17-18 (D. Md. Apr. 5, 2012).

In light of the foregoing, the Medical Defendants are entitled to judgment as a matter of law as based on the undisputed material facts there is no evidence from which a jury could reasonably find for Plaintiff. Anderson, 477 U.S. 242 (1986).

### C. PLAINTIFF DOES NOT ALLEGE FACTS SUFFICIENT TO SUPPORT A CLAIM FOR PUNITIVE DAMAGES

Punitive damages are allowed in an action under § 1983 when the defendant's conduct is shown to be "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." See Smith v. Wade, 461 U.S. 30, 56 (1983). No such allegations have been made in this case, and given the treatment provided Plaintiff outlined in the medical records attached as Exhibit 1, no such allegations can be made. Accordingly, Plaintiff is not entitled to punitive damages and that claim must be denied.

16

{392291.DOC}

### D.    PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF

A preliminary injunction is an "extraordinary and drastic remedy". See Munaf v. Geren, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction, a movant must demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. See Winter v. Nat. Resources Def. Council, Inc., 555 U.S. 7, 20 (2008); The Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).

All four of the Winter requirements must be established independently. The Real Truth About Obama, Inc., 575 F.3d at 346. The establishment of one or two of these factors does not relax the remaining requirements; there is no longer a 'flexible interplay' among the four factors. Id. at 347. Thus, a plaintiff seeking a preliminary injunction must always "demonstrate that irreparable injury is *likely* in the absence of an injunction" even if he has established a likelihood of succeeding on the merits. Winter, 555 U.S. at 22 (emphasis in original).

Both the Supreme Court and the Fourth Circuit have emphasized that courts must consider the public interest impact of preliminary injunctions. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter, 555 U.S. at 24, quoting Weinberger v. Romero–Barcelo, 456 U.S. 305, at 312. Indeed, in Winter the Supreme Court reversed the Ninth Circuit because it had "understated" the public interest burden that would occur if a preliminary injunction is granted. Id.

"Issuing a preliminary injunction based only on a possibility of irreparable harm is

17

inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at, 22 (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam)). Plaintiff has failed to demonstrate his likely success on the merits, that he is likely to suffer irreparable harm, or that the protective order he seeks is in the public interest. Indeed, Plaintiff has failed to demonstrate that his institutional record has in any manner been harmed by this incident. As such, his motion should be denied. Moreover, Wexford is not in control of his institutional record and is not a proper party to provide Plaintiff the injunctive relief he seeks.

## V. CONCLUSION

Plaintiff's Complaint fails to state a claim upon which relief can be granted and must be dismissed. Alternatively, the undisputed facts establish that Plaintiff has received constitutionally adequate medical care. Thus, there is no evidence that the Medical Defendants willfully and knowingly disregarded Plaintiff's substantial medical needs to sustain a claim for deliberate indifference.

Respectfully submitted,

**MEYERS, RODBELL & ROSENBAUM, P.A.**

By: _____/s/_____
    Gina M. Smith, Federal Bar #03724
    Douglas C. Meister, Federal Bar #13111
    dmeister@mrrlaw.net
    6801 Kenilworth Ave., Suite 400
    Riverdale, Maryland 20737
    (301) 699-5800

{392291.DOC}