# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JARED ANDREW NEISSER,           *

Plaintiff                          *

v.                                *           Civil Action No. ELH-19-888

WEXFORD HEALTH SOURCES, INC., *et al*. *

Defendants                    *

                               ***

## MEMORANDUM OPINION

In this § 1983 civil rights action, the self-represented plaintiff, Jared Andrew Neisser, a prisoner at Maryland Correctional Training Center, alleges that defendants acted with deliberate indifference to his medical needs while he was housed at Jessup Correctional Institution ("JCI"). ECF 1; ECF 6. He also complains that he was denied access to his medical records. *Id*. The plaintiff submitted exhibits with his suit.

Defendants Wexford Health Sources, Inc. ("Wexford"); Marnette Valcin, N.P.; Bernard Alenda, N.P.; and Eveline Bobga Tatong, R.N.[1] have moved to dismiss or, in the alternative, for summary judgment. ECF 17. The motion is supported by a memorandum (ECF 17-3) (collectively, the "Motion") and several exhibits. Neisser opposes the motion. ECF 21; ECF 24; ECF 26. Defendants have replied. ECF 22.[2]

---

[1] In the Complaint, Nurse Tatong's first name incorrectly appears as "Evalile." The Clerk will be directed to correct the spelling.

[2] Plaintiff has labeled his submissions as motions to dismiss, but I shall construe them as oppositions. Defendants moved to strike ECF 24 as an unauthorized surreply. *See* ECF 25. Considering plaintiff's self-represented status, defendants' motion is denied.

No hearing his needed to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, defendants' Motion, construed as a motion for summary judgment, shall be granted.

## I. Background

### A. Plaintiff's allegations

On August 21, 2018, plaintiff had an epileptic seizure while he was in his cell. ECF 1 at 5. Plaintiff states that his medical records clearly indicate that he suffers from epilepsy, but Wexford medical staff treated him as though he were suffering from a drug overdose, rather than from a seizure, and administered Narcan. *Id.* He was transferred to the medical unit where another dose of Narcan was administered intra-muscularly. *Id.* Shortly thereafter, his "legs locked up," which plaintiff attributes to the use of Narcan. *Id.* He was then given Benadryl to "stop the reaction." *Id.* The following day, plaintiff was transferred back to MCTC, where a urinalysis was performed. It showed that plaintiff had not taken any illegal substances. *Id.*

Plaintiff filed a grievance regarding the incident. *Id.* He maintains that the conduct of the medical providers could have adversely affected his security status, good time credits, and release date. *Id.* Plaintiff also alleges that unidentified defendants hindered his access to his medical records by stating that he could only access them once every six months. *Id.* at 6. Ultimately, plaintiff was provided access to the records when he invoked his rights under the Freedom of Information Act. *Id.*

### B. Medical Defendants' Response

#### 1. August 21, 2018 incident

On August 21, 2018, at approximately 6:27 p.m., RN Tatong and Nurse Practitioner Valcin evaluated plaintiff in response to an emergency medical call. ECF 17-4 at 2-3, 4-5. Custody staff

reported that plaintiff had been found shaking on his bed and was then moved to the floor. *Id*. at 2.

Valcin's note indicates that when she responded to plaintiff's cell he was found on the mattress, "lying on prone position . . . ." *Id*. at 4. Although plaintiff was breathing, he did not respond to pain or voice stimuli. *Id*. He was sweating heavily and there was no indication of what preceded the change in his mental status. *Id*. Tatong noted that when she arrived, plaintiff was on the floor, sweating, and unable to follow commands. *Id*. at 2-3.

At approximately 6:35 p.m., a spray of Narcan was administered.[3] *Id*. at 2, 4. Plaintiff immediately opened his eyes and made eye contact. He was still weak and could not follow commands. *Id*. at 2, 4. Plaintiff was taken to the medical unit where he was coherent but remained drowsy, weak, and exhibited slow speech. *Id*. At 6:45 p.m. Valcin directed an intramuscular administration of Narcan. *Id*. Fifteen minutes later, plaintiff's speech improved and he was alert and oriented to person, place, and time. *Id*. Plaintiff advised medical staff that he had stopped taking his seizure medication for some period. *Id*. He denied that he had taken illegal drugs. *Id*. at 4. It was unclear whether plaintiff was suffering from a "Post ictal state vs substance abuse." *Id*. He was given Keppra[4] and Tylenol. *Id*. at 2, 4. Plaintiff responded to the treatment. *Id*.

At approximately 7:51 p.m., plaintiff complained that both of his legs were "locking up." *Id*. at 3, 4. At the direction of Valcin he was given Benadryl intramuscularly. *Id*. A short time later, plaintiff complained of headache and was provided Excedrin Migraine. He reported feeling

---

[3] Naloxone (Narcan) blocks or reverses the effect of opioid medication including extreme drowsiness, slowed breathing, or loss of consciousness. *See* https://www.drugs.com/naloxone.html (last visited 12/5/19).

[4] Keppra (levetiracetam) is an anti-epileptic drug. *See* https://www.drugs.com/keppra.html (last visited 12/5/19).

much better and at 10:20 p.m. was discharged back to his housing unit by Nurse Practitioner Alenda. *Id*. at 3, 6.

Ayoku Oketunji, M.D., a licensed Maryland physician and a Wexford employee, examined plaintiff's medical records. ECF 17-5 (Affidavit). Plaintiff was 40 years of age at the time, with a medical history of epilepsy, depression, and other conditions. ECF 17-5, ¶ 4. He explains that plaintiff's recovery "was clinically assessed as ambiguous for either post ictal seizure symptoms or opioid toxicity." *Id.* ¶ 11. But, plaintiff's rapid increase in responsiveness to Narcan was typical for opioid toxicity. However, he also displayed symptoms of recovery from an ictal seizure. *Id*. The cause of plaintiff's condition was not apparent at that time. *Id*. Moreover, plaintiff "had admitted not being compliant with Keppra." *Id*.

On September 10, 2018, plaintiff submitted a sick call slip requesting to be seen by mental health and complaining that since the incident at JCI on August 21, 2018, he had difficulty sleeping and concentrating and was extremely worried. ECF 17-4 at 7. He was seen by mental health staff the same day. *Id*. at 8. Neisser was irritable, defensive, and angry about the events at JCI. *Id*. Plaintiff requested confirmation that medical had done something wrong and when the mental health provider explained that it was not his role to make such an assessment plaintiff became upset and left the appointment. *Id*.

Contah Nimely, M.D. saw plaintiff on September 10, 2018, for a chronic care appointment. ECF 17-4 at 9-11. It was noted that plaintiff's most recent seizure had occurred a few weeks earlier. *Id*. at 9. Plaintiff stated that he was not taking Keppra and wanted to continue Excedrin because it improved his headaches. *Id*. Dr. Nimely advised plaintiff to discontinue use of Excedrin if he had another seizure and was reminded to be compliant with the Keppra. *Id*. Plaintiff's physical examination was unremarkable. *Id*. at 9-10.

On December 4, 2018, plaintiff was seen again in the chronic care clinic. ECF 17-4 at 12-14. He had not suffered any seizures in the previous 90 days and his physical examination was unremarkable. *Id.*

Dr. Oketunji opines that the mid-level providers who treated plaintiff on August 21, 2018, followed the appropriate medical standard of care for treating an unresponsive patient presenting with plaintiff's clinical conditions. ECF 17-5, ¶¶ 7, 8. He explains that absent an obstructed airway, obvious impaired circulation or hypoglycemia, none of which were present in this case, the standard of care dictated treating plaintiff with Narcan. *Id.* ¶ 8.

Specifically, Dr. Oketunji avers: "In view of the potentially very serious, and commonly lethal, effects of opioid toxicity . . . compared to the low incidence of side effects from Narcan, it is standard medical procedure to administer [Narcan] . . . for unresponsive patients notwithstanding other potential sources of unresponsiveness including reported or observed seizure activity or in a patient with seizure history." *Id.* ¶ 8. He added, *id.*: [I]n short, the benefit of using the medication prior to confirmation of overdose outweigh[s] the risks to the patient particularly in the prison setting where abuse and overdose on opioids is common." *Id.* In Dr. Oketunji's opinion, to a reasonable degree of medical probability, the administration of Narcan was appropriate treatment of plaintiff's unresponsive condition on August 21, 2016, and plaintiff did not suffer any significant harm due to its administration. *Id.* ¶ 12.

### 2. Access to Medical Records

On January 26, 2019, plaintiff submitted a sick call slip requesting his medical records. ECF 17-4 at 15. Subsequently, he submitted a memorandum stating that the Maryland Public Information Act mandated he be given his medical records. *Id.* at 16. The Department of Public Safety and Correctional Services limits inmates' access to their medical records for review and

copies to once every six months.  ECF 17-6.

## II. Standard of Review

Defendants' motion is styled as motions to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss."  *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed App'x. 220, 222 (4th Cir. 2016) (per curiam).  However, when the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious."  *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[5]

---

[5] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so.  *Id.* (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165, 167.

Generally, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 Fed. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed

---

of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 Fed. App'x at 222 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).

discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F.Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F.Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule

56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. App'x at 638.

Plaintiff has not requested discovery. As such, I am satisfied that it is appropriate to address defendants' Motion as one for summary judgment, because doing so will facilitate resolution of this case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see Sharif v. United Airlines, Inc.,* 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). And, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs*., 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Moreover, the trial court may not make credibility determinations on summary judgment. *Wilson v. Prince George's Cty.*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313

(4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

### III. Discussion

#### A. Section 1983

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Graves v. Loi*, 930 F.3d 307, 318-19 (4th Cir. 2019); *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied,*

135 S. Ct. 1983 (2015).  However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  *City of Monterey v. Del Monte Dunes at Monterey, Ltd*., 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

Section 1983 also requires a showing of personal fault based upon a defendant's personal conduct.  *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights).  In other words, there is no respondeat superior liability under § 1983.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Liability of supervisory officials under § 1983 "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  *Baynard v.*

*Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).  With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *see also Wilcox*, 877 F.3d at 170.

**B.  Deliberate Indifference**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).  "It is beyond debate that a 'prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment.'"  *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019) (citation omitted).

"Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). The protection conferred by the Eighth Amendment imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the safety of . . . inmates." *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016).

The deliberate indifference standard is analyzed under a two-pronged test: "(1) the prisoner

must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson v. Virginia*, 878 F.3d 89, 97-98 (4th Cir. 2017) (quoting *Farmer*, 511 U.S. at 834, 837-38). "The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally *denying* or *delaying* medical care, or intentionally *interfering* with prescribed medical care." *Formica v. Aylor,* 739 F. App'x 745, 754 (4th Cir. 2018) (emphasis in *Formica*).

For a plaintiff prisoner to prevail in a suit alleging the denial of adequate medical care, the defendant's actions or inaction must amount to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106; *Lightsey*, 775 F.3d at 178; *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Deliberate indifference to a serious medical need requires proof that, objectively, the plaintiff was suffering from a serious medical need and that, subjectively, the defendant was aware of the need for medical attention but failed either to provide it or to ensure that the needed care was available. *See Farmer*, 511 U.S. at 837; *see also Schilling*, 937 F.3d at 357; *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018); *King*, 825 F.3d at 219. A "'serious . . . medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)); *see Scinto*, 841 F.3d at 228.

The *Heyer* Court explained: "The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." *Heyer*, 849 F.3d at 209-10. In the context of a claim concerning medical care, the subjective component of the standard requires a determination as to

whether the defendant acted with reckless disregard in the face of a serious medical condition, *i.e.*, with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298; *see Farmer*, 511 U.S. at 839-40; *Scinto*, 841 F.3d at 225.

As the *Farmer* Court explained, 511 U.S. at 837, reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Similarly, the Fourth Circuit has said: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see also Young v. City of Mount Ranier,* 238 F.3d 567, 575-76 (4th Cir. 2001) ("Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care.").

Put another way, "it is not enough that the defendant *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178 (emphasis in *Lightsey*); *see also Anderson v. Kingsley*, 877 F.3d 539, 544 (4th Cir. 2017). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

Generally, "[a]n actionable deliberate-indifference claim does not require proof that the plaintiff suffered an actual injury. Instead, it is enough that the defendant's actions exposed the

plaintiff to a 'substantial *risk* of serious harm.'" *Heyer*, 849 F.3d at 210 (quoting *Farmer*, 511 U.S. at 837) (emphasis added in *Heyer*); *see Thompson*, 878 F.3d at 97-98.  But, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014); *see De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013).[6]

Nevertheless, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *accord Brown v. Harris*, 240 F.3d 383, 390-91 (4th Cir. 2001).  The Constitution requires prison officials to ensure "reasonable safety," a standard that acknowledges prison officials' "unenviable task of keeping [sometimes] dangerous [people] in safe custody under humane conditions[.]" *Id.* at 845 (citations and quotation marks omitted).  Accordingly, "prison officials who act reasonably cannot be found liable" under the deliberate indifference standard.  *Id.*; *see also Short v. Smoot*, 436 F.3d 422, 428 (4th Cir. 2006) (finding that an officer who responds reasonably to a danger facing an inmate is not liable under the deliberate indifference standard, even when further precautions could have been taken but were not); *Stritehoff v. Green*, CCB-09-3003, 2010 WL 4941990, at *3 (D. Md. Nov. 30, 2010) ("An officer who responds reasonably to 'the risk of which he actually knew' is not liable for deliberate indifference.") (quoting *Brown*, 240 F.3d at 390-91).

Notably, deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness" and, "as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Lightsey*, 775 F.3d at

---

[6] The Supreme Court has rejected the "significant injury" requirement in regard to an excessive force claim under the Eighth Amendment. *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (per curiam); *see Danser*, 772 F.3d at 346 n.8 (distinguishing deliberate indifference claims).

178; *see also Scinto*, 841 F.3d at 225; *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986). In *Estelle*, 429 U.S. at 106, the Supreme Court said: "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."

What the Court said in *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999), *cert. denied,* 529 U.S. 1067, (2000), is also pertinent: "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . ." *See also Young*, 238 F.3d at 576 (stating that a Fourteenth Amendment deliberate inference claim requires more than a showing of "mere negligence"); *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998) ("[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference.").

Although the deliberate indifference standard "'entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *King*, 825 F.3d at 219 (quoting *Farmer*, 511 U.S. at 835). A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842). In *Schilling*, 937 F.3d at 357, the Court recognized that a defendant's "subjective

knowledge can be proven 'through direct evidence of [his] actual knowledge or circumstantial evidence tending to establish such knowledge . . . .'" (quoting *Scinto*, 841 F.3d at 225).

Of course, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk." *Brice*, 58 F.3d at 105. But, an inmate's mere disagreement with medical providers as to the proper course of treatment does not support a claim under the deliberate indifference standard. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977). Rather, a prisoner-plaintiff must show that the medical provider failed to make a sincere and reasonable effort to care for the inmate's medical problems. *See Startz v. Cullen*, 468 F.2d 560, 561 (2d Cir. 1972); *Smith v. Mathis*, PJM-08-3302, 2012 WL 253438, at * 4 (D. Md. Jan. 26, 2012), *aff'd*, 475 F. App'x 860 (4th Cir. 2012); *Lopez v. Green*, PJM-09-1942, 2012 WL 1999868, at * 2 (D. Md. June 3, 2012); *Robinson v. W. Md. Health Sys. Corp.*, DKC-10-3223, 2011 WL 2713462, at *4 (D. Md. July 8, 2011).

Here, the evidence, viewed in the light most favorable to plaintiff, establishes that he received constitutionally adequate medical care. When viewing the evidence as a whole, and in the light most favorable to plaintiff, no evidence exists that defendants' conduct amounted to deliberate indifference. *See Estelle*, 429 U.S. at 105-06 (holding that an inadvertent failure to provide adequate medical care does not amount to deliberate indifference). As noted, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright*, 766 F.2d at 849 (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir. 1970)).

No exceptional circumstances exist here. To the contrary, when medical providers arrived at plaintiff's cell, he was non-responsive and sweating profusely. Believing that plaintiff could be suffering from a drug overdose, they administered Narcan, a drug that poses low risk, especially

when compared to the risk of not administering it when needed. And, plaintiff responded. Additional Narcan was administered in the medical unit, and when plaintiff regained responsiveness he advised medical staff that he had been non-compliant with his anti-seizure medication. He was provided those medications, as well as other analgesic medication, and he was monitored.

Dr. Oketunji explained that the standard of care for a non-responsive patient such as plaintiff, even with a diagnosis of seizure disorder, is the use of Narcan. It is clear from the record before the court that the responding medical providers acted quickly when confronted with plaintiff's non-responsiveness. That plaintiff ultimately tested negative for opioid use and appeared to have been suffering from a seizure is not dispositive of his claim. On the facts before them, including plaintiff's diagnosis of epilepsy, the medical providers nevertheless acted reasonably and were not deliberately indifferent to plaintiff's serious medical needs.

Additionally, plaintiff makes no direct allegations against Wexford. Instead, he seeks to hold Wexford liable for the actions of its employees. As noted, the doctrine of *respondeat superior* does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no *respondeat superior* liability under § 1983). Rather, liability of supervisory officials is "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

To establish supervisory liability under § 1983, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2)

the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw,* 13 F.3d at 799 (citations omitted). And, of relevance here, "[a] single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (footnote and citations omitted).

Plaintiff has failed to plead or demonstrate facts sufficient to support supervisory indifference to, or tacit authorization of, any misconduct by Wexford's employees. As discussed above, plaintiff failed to show that his constitutional rights were violated. Accordingly, he has necessarily failed to demonstrate that Wexford authorized or was indifferent to any such violation. Plaintiff's assertions do not demonstrate any pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983 liability. *See id.* ("Generally, a failure to supervise gives rise to § 1983 liability, however, only in those situations in which there is a history of widespread abuse.").

A.      Access to Medical Records

DPSCS has a stated policy regarding inmate's access to their medical records. In his Complaint, plaintiff indicates that, despite the initial denial of access to his records, he was nevertheless able to timely access his records. He has failed to allege, much less demonstrate, any injury arising from either the delay in access or the policy itself. Additionally, plaintiff has failed to explain how any of the named defendants are responsible for his inability to access his medical records, as alleged.

### IV. Conclusion

For the foregoing reasons, defendants' motion for summary judgment, will be GRANTED.

Judgment will be ENTERED in favor of defendants and against plaintiff.[7]

A separate Order follows.

December 10, 2019                                        /s/
Date                                          Ellen L. Hollander
                                              United States District Judge

---

[7] Having found no Eighth Amendment violation, the court need not address defendants' other defenses.